Good morning. I'm Juan Hong. I represent plaintiff Calop Business Systems. Today I challenge the District Court decision on my client's claim on due process violation of living wage ordinance and ERISA preemption of LWO, living wage ordinance, and Airline Deregulation Act preemption of living wage ordinance, and Railway Labor Act preemption of the living wage ordinance. I want to introduce some significant numbers in this case. Before January 19, 2010, living wage ordinance requires airport employers to pay $10.30 per hour to the laborers and $1.25 for health benefits. You mentioned health benefits, and I guess before we get too far into your specific facts on that front, I'm curious, I mean, whether you have standing, because to have standing to argue that the phrase health benefits you're talking about is unconstitutionally vague, don't you have to show that you provided your employees with health benefits of some kind? Yes, Your Honor. During January 19, 2010 to January 31, 2010, the Calop Business Systems sent $4.50 per hour of wage to SEIU Trust Fund, which handles health benefits. Well, does it, I mean, because it sounds like your colleagues over here challenged that. I mean, that it went into some kind of account, but the person who was representing them didn't have authority to represent them, and so that money, I'm not quite sure what it is, but I'm not sure that it went to health benefits. What's your best evidence or facts that you're saying that that went into health benefits? Employers approved, consented the transfer of $4.50 an hour to their own representative union, SEIU Trust Fund. So, in other words, Calop had an option to use $4.50 to pay in cash to the laborers, or Calop has an option to buy health insurance and pay health insurance premium to the insurers for the benefits. But in this particular case, the employees consented and approved that Calop Business Systems sent $4.50 to SEIU Trust Fund. Did SEIU Trust Fund give Calop back the money? Did the SEIU Trust Fund return the money to Calop? No, Your Honor. Why didn't you go after them for it? After SEIU was decertified by the employees of Calop Business Systems, because employees felt they were betrayed and misrepresented by SEIU, the laborers filed a decertification petition. But what happened to the Trust Fund? Then after three or four months later, SEIU induced five employees to file a complaint to the City of Los Angeles because they did not receive $4.50 an hour from Calop Business Systems. Then the City of Los Angeles concluded that Calop Business Systems violated the living wage ordinance. Therefore, Calop should pay the money to employees. Right, and that's the $26,000 that's at issue in this case? Yeah, that was an issue. No, no, that issue in this case is $26,000, right? $29,000. $29,000? Yeah, that was in the, as a fact, evidence. Have you tried to sit down with the City and mediate this? I mean, it seems like a very small amount of money to be, you know, spending all these attorney's fees prosecuting this. Yes, that is a small amount of money, but that is also a large amount of money considering the business revenue and the laborers' hourly pay. And the reason why the Calop Business Systems sued the City of Los Angeles beyond the $29,000 is because Calop is not a unionized company. Therefore, Calop is threatened all the time to stop doing business at the airport. It's because the Calop unionized company has to pay $14.80. That was the year 2010. However, unionized companies can pay much less than that without violating LWO because LWO have a so-called supercession provision or it's called excuse provision that the union doesn't have to pay. That seems like a political issue to me, not a question of the constitutionality of the LWO. I mean, you're arguing perhaps that you're, I mean, I understand exactly what you're saying, but it seems like a political issue. I agree somewhat, but I do not agree, Your Honor, because this is a city ordinance equivalent to statute, state statute or other law. This law says everywhere living wage ordinance is a minimum compensation. Laborers should be paid this minimum compensation. Then suddenly, at the end of the provision, it says if you are a unionized company, you have a collective bargaining agreement, you don't have to abide by this rule. Then men of ordinary intelligence like me say, what is this? They say it's a minimum. I know nothing can go below minimum. Then why? Let's try to just, I just want to make sure I understand because it seems here that you're arguing that the phrase health benefits is impermissibly vague. That's your argument, correct? Because you say it does not make clear whether it includes dental or vision benefits or deductibles or co-pays. But that doesn't really apply to you because you weren't giving those kind of health benefits. What happened is you entered into an agreement, it looks like, with the SEIU folks. At the direction of this SEIU, you paid money into a health trust fund. Is that correct? Yes. Okay. So I'm just trying to figure out, you're now challenging that the health benefits provision is vague. I think I understand, but that really doesn't apply to you. Why aren't you going after, I think Judge Wardlaw asked this question too, after this representative who took the $28,000 or $29,000. I mean, where is that $29,000? As I stated before, this lawsuit is not just for $29,000 because this lawsuit is about the living wage ordinance, which will make a callous business system to survive or not. Therefore, callous business system can bid to airline company with a reasonable amount of cost so that we can compete with each other. However, unionized company can pay $9 an hour to their employee. Why don't you answer the question? The question was where is that money? Who has that money? SEIU trust fund has that money. But Caleb didn't ask SEIU to return that money. Did not? Caleb did not because there was so much conflict and in ordinary world fight against each other. SEIU sued Caleb at the federal court. But it was your money and you gave it to SEIU. Why didn't you try to get it from SEIU? That's happened to be so. But that's critical though. I mean, because that's what you're claiming part. I know you're saying the whole living wage is wrong, ordinance is wrong, but what we have in front of us and what we can kind of try to make out from your claim here on appeal is that it's vague. It's related to health benefits. You put money in a trust during this brief period of time while you were trying to negotiate with the city. And now SEIU apparently took your money because this representative who you may have thought was authorized to take it didn't really have authority. And you're making all kinds of claims against everybody except the people who took your money. So I'm kind of, I feel like I'm at a loss as to what's going on here and why you're not pursuing that. SEIU sued Caleb Business System in June 2010 at the district court. And Judge Otero denied their motion for summary judgment. In other words, Caleb Business System prevailed. Then Caleb Business System sued several SEIU representatives for fraud and misrepresentation in the Superior Court in the state of California. And we settled. So $29,000 is no longer an issue, so we didn't ask in this lawsuit. Right, but how much does the city want Caleb to pay back to the city? That decision was not made because it was dismissed before that happened. Isn't this about the city wants Caleb to pay a certain amount of money? No. It was several representatives' fraud and misrepresentation in this issue. You're almost out of time. Do you want to save any time? And there are ERISA preemption and ADA preemption and the Railway Labor Act preemption. So there are causes of action which I challenge about the district court decision. And as for ERISA, district court said the LWO neither encouraged nor discouraged employers from providing health benefits plan for their employees. This is wrong. As opening brief and reply brief clearly stated that LWO encouraged employers from providing health benefit plan because $4.50 in year 2010 health benefit portion was $4.50 and labor's wage was $10.30. So if at that time when union would represent them, they had a choice. I want to get $14.80 instead of health benefit. The company spent $4.50. That is almost 30% of their salary. So that's why the employees decertified the union. So here ERISA, the LWO clearly discouraged employers from providing health benefit because of the overtime burden, because of the federal tax, etc. All right. Counsel, you're out of time. Thank you very much. Good morning. I'm Jed Springer. Together with me is Jennifer Taggart, serving as co-counsel to city attorney Mike Feuer. It's my honor today to be here defending the living wage ordinance, which helps thousands of people employed at the airports live their lives above the poverty level and enable them to live their lives with dignity. This is a dispute over $27,000 or $29,000, I think. Isn't that right? That seemed to me to be one of the issues that was raised by the plaintiff. We're not going into the whole wage structure of Los Angeles. It seemed to be a very specific amount. Yes, and if we could have settled this... Who has that money now? My understanding, based on their pleadings, is that the SEIU received that money. The city doesn't have it. Oh, no. They're suing the wrong person. I'm sorry? They're suing the wrong entity. That's what I believe. Well, that seems to be rather decisive. Can you help explain a little bit what happened here? I'm trying to figure this out. Apparently, during the time when they were trying to negotiate a lower minimum wage, is that right, there's an SEIU representative that comes in? I can only rely on their pleadings. The city is not permitted to participate in any such negotiations. Likewise, the city, in order to have a valid living wage ordinance, it must have a supersession clause. Otherwise, the living wage ordinance would interfere with union organization. Okay, so he says that companies at the airport that are unionized don't have to pay the living wage ordinance, right? They may elect to opt out of the living wage ordinance pursuant to a specific provision in the living wage ordinance and pursuant to very settled authority. So what I seem to be hearing is that this living wage, although this particular claim is not made in this lawsuit, that you would think you would argue equal protection, that if the unionized companies can opt out, but non-union companies can't, and that that was done with the intent of forcing all the companies at the airport to be unionized. I'm just asking. That kind of issue could possibly come up at some point. I think that that possibility was recognized by Judge Wilson in his opinion, dealing with the other living wage ordinance that's at the Los Angeles Municipal Code. That political action has never, you know, let's say if the living wage was not actually established at just above the poverty level, let's say it was established at $50 an hour or $100 an hour, then you could ascribe that motivation or bad intent to a city council. That's a different case. Okay. So the question about, so we, CALIP was ordered to pay $28,000 to the city, right? No. No. Okay. It would have, if it had, if it did what it was supposed to do, it would have paid its employees. Right. So what was the, what did the city do when the employees complained that they didn't get their health benefits paid? The city issued a letter to CALIP saying that it was in violation and if it wanted to contest that violation, pursuant to the living wage ordinance, if it wanted to contest that violation, it could pay that $28,000 to the city to hold in trust. CALIP chose not to pay the city to hold it in trust, chose not to challenge the determination by the city, instead chose to simply pay its employees the $28,000. But they don't owe you any money. Then they came as a separate action. They found, they alleged all these constitutional and preemption claims to strike down the living wage ordinance. Later on they did, yes. Later on, so. Yes, outside of the time within which they could have challenged the determination by the city with respect to its enforcement action. Okay. Edsel, what are your responses to these challenges? I think all of the challenges have been very adequately briefed in the city's brief. I'd like to mention, if I could, though, two recent Supreme Court cases that I believe are not controlling here. One of them. Are controlling or not? Are not. Certainly, the Northwest Inc. versus Ginsburg case, recent as a 2014 case, it dealt with the ADA, the Airline Deregulation Act. I'm not sure I understand. You're highlighting these cases that are not relevant. I'm not sure I understand. Because probably one of your clerks is going to find these cases, and I would like to just say why I believe. Why? We're laughing, not at you. We're laughing because no one's ever done, in my experience, no one's ever, maybe you were a law clerk and so you know that they do, in fact, find cases. They do find. I was really impressed by the district court's opinion here. I never expected to perceive that much. It was a very well done opinion. It was extremely. Judge Morrow is extremely thorough. Yes. May I just mention the two new cases? Sure. One is Northwest Inc. versus Ginsburg, a U.S. Supreme Court case just last year. It dealt with Northwest's frequent flyer program, and what happened was the airline revoked the customer's membership, and the customer sued for breach of contract and breach of the implied covenant of good faith and fair dealing. The state law that was applied in that case was Minnesota, and it turns out that the state law in that case does not allow parties to contract around the implied covenant of good faith and fair dealing. The United States Supreme Court, therefore, held that that was, in effect, a law or regulation, and because the law and regulation related to frequent flyer program, and you can turn those in for either a discount fare or an upgrade to a nicer seat, that therefore affected rates and services, and because you couldn't opt out of it in Minnesota, the United States Supreme Court said that the implied covenant is preempted in states which do not allow an opt-out. So that case obviously dealt with a frequent flyer program. When I saw a frequent flyer program, I was wondering whether there was a municipal court or something to deal with that, but that was stupid because that's the United States Supreme Court that dealt with that, and they said it has to be uniform. Okay, that's not applicable here because what we have is a living wage ordinance, which has been in decisions both in the United States Supreme Court and in this circuit many times has been held not to affect prices, not to affect services, and that finding, as has been done repeatedly, still applies here. There's nothing in that Ginsburg case that is applicable here. The other one is the American Trucking Association v. City of Los Angeles. That's a 2013 case that deals with the FAAA Act, the Federal Aviation Administration Authorization Act, that is extremely similar to the Airline Deregulation Act, but it applies to motor carriers, and in that case, the City of Los Angeles Port required a specific placard program on trucks, required the placement of placards, and required that all motor carriers also have a parking plan for when they are not in the port, and the United States Supreme Court held that both parties agreed that the placard and parking plan affected routes and services. So the issue that is of moment here was not there. There they agreed it affects routes and services. Here we say there is settled authority in the Ninth Circuit and in the United States Supreme Court to the effect that prevailing wages laws and living wage laws do not affect prices or services, and therefore there is no preemption, and that's why those two cases do not result in a preemption here. I would just like to mention, yes, the living wage cases, that there is a very important presumption that applies in preemption cases to wage law cases, which comes from the Dillingham case, where the United States Supreme Court said that in an area such as wage laws, and that one was a prevailing wage case, there is an important presumption against preemption, and unless the statute specifically says something about wages, that there is a presumption against it, and then you look at the purpose and do all the normal things associated with statute. What case is that? That's the Dillingham case, and there are two Ninth Circuit cases as well. The Mendonca case, California's for Safe and Competitive Dump Truck, specifically acknowledged that, excuse me, the Air Transport Association versus City and County of San Francisco, specifically noted that that presumption applies. In that case, that was a wage case, a wage contract case, ordinance adopted by the City and County of San Francisco, which prohibited discrimination in connection with the handling of benefit plans to couples that had same-sex spouses. And another one was the Mendonca case, yes. That was an F quadruple A case, but it dealt also with the California living wage law, and specifically found that there was no preemption because the living wage is simply not related to routes, prices, or services, and in that case, there was an allegation of a much higher wage requirement that was much higher than the living wage that is at issue here with respect to the level over the minimum wage, if you would. So unless there's any further questions, I have no further comments. All right, thank you, counsel. Thank you for your time and attention. You used up all your time. I'll give you one minute. You used up all of your time, but I'll give you one minute. One minute. Unfortunately, I didn't have much time to argue on three causes of action. Those are ADA, RLA, and the areas of preemption. That's adequately briefed. You adequately briefed that. And then I want to add Mr. Springer's statement on the Northwest versus Ginsburg. That case is relevant to this case. That helps my client, Calab Business System, because that case holds that, this is a quote, such a claim is preempted if it seeks to enlarge the contractual obligation that the parties voluntarily adopt. In the present case, each year, Calab Business System service company renew a contract with airline company. So that is a so-called standard agreement, which is stated in the opening brief. And one item there is change of invoice submission based upon the living wage change. In other words, living wage increase from $10 to $15, there is an enlargement of contractual obligation. Therefore, that will affect the airline company's price and cost. Therefore, Airline Deregulation Act should preempt the living wage ordinance. So, in other words, I do not agree what Mr. Springer presented about Northwest and Ginsburg. And another case about American Trucking Company versus DILT, that has nothing to do with this Airline Deregulation Act. Because the decision was as applied to trucking industry. Trucking industry is different from airline company because truckers can drive 10 hours and stop, take a rest break. However, airline pilot cannot stop their plane in the air and take a five minutes break. That's right. All right. Thank you, counsel. You're well over your time. Callup Business Systems. Can I ask Mr. Hong a question? Yes. I see you went to William Howard Taft University Law School. Where is that? That's a correspondence school. Correspondence school? Yeah, that is not a regular school. And where is it located? Where? Where is it located? In Santa Ana. What? Santa Ana, California. Uh-huh. Thank you. I hope that will affect the decision of this case. I graduated from the correspondence school instead of... That will not affect our decision. Thank you very much for your argument. Thank you. Callup Business System versus City of Los Angeles will be submitted and this session of the court is adjourned for today. Thank you.
judges: Noonan, Wardlaw, Murguia